■ In the Matter of the Claim of GEORGE STALLONE, Respondent, v. LIEBMANN BREWERIES et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by the employer and its carrier from a decision and award of the Workmen's Compensation Board. The claimant worked as a

draftsman from 8:00 A.M. to 4:30 P.M. When work was available he worked for the employer herein from 6:00 P.M. to 2:00 A.M. While working at this latter job the claimant sustained injuries to his face and back. He was unable to perform the work which he did for the employer herein but he has continued to work as a draftsman. The board found "dual and dissimilar" employments (cf. *Matter of Brannigan* v. *Terzakis,* 285 App. Div. 980, affd. 309 N. Y. 892). The only question raised here is the correctness of the determination of the claimant's average weekly wage. The claimant had worked 42 days in the year preceding the accident for this employer, earning $1,269.36 or $30.23 per day. The board utilized subdivision 3 of section 14 of the Workmen's Compensation Law in arriving at the average weekly wage. Thus the daily wage was multiplied by 200 and divided by 52. The board arrived at $154.73 which as the appellants point out should have been $116.27 but in any event the award would be at the maximum rate of $36. The appellants' objection is to the use of subdivision 3 of section 14 and they contend that the claimant's actual earnings should govern which would give him an average weekly wage of $24.41. The board could clearly find that neither subdivisions 1 nor 2 of section 14 could fairly or reasonably be applied here so that subdivision 3 could properly be used. This court has recently upheld awards in two similar cases where by using subdivision 3 of section 14 the amount of the award exceeded the claimant's earnings. (*Matter of Chromey* v. *Argentieri,* 10 A D 2d 749; *Matter of Batal* v. *Mayersohn,* 11 A D 2d 857.) While the result in such cases appears to be contrary to section 15 (subd. 6, par. [a]) which provides that compensation when combined with decreased earnings or earning capacity shall not exceed the wages the employee was receiving at the time of the accident, it is the result reached by using the formula set forth in subdivision 3 of section 14 which has been considered a legislative mandate (*Matter of Terry* v. *City of Glens Falls,* 2 A D 2d 625, motion for leave to appeal denied 1 N Y 2d 644). The only limitation would appear to be when the employee has limited his participation in the labor market as in *Matter of Derion* v. *Gilford Mfg. Co.* (282 App. Div. 788); *Matter of Winter* v. *Camp Scatico* (7 A D 2d 812) and such was not the case here. The claimant testified that he worked whenever there was work, the payroll records indicate that he worked at all times of the year and that he was employed when his seniority would permit. Decision and award affirmed, with costs to the Workmen's Compensation Board. Bergan, P. J., Coon, Gibson and Reynolds, JJ., concur; Herlihy, J., dissents, in the following memorandum, and votes to reverse and remit: The claimant's principal occupation was working for the Mergenthaler Linotype Company where for the year immediately preceding the accident he received wages of $4,176.38. In the Summer and on other occasions — primarily around the holiday season when extra help was required — he worked for the appellant. In 1957 he earned $527; in 1956 a total of $853; in 1955 a total of $656; in 1954 a total of $1,917. In August, 1957, while in the employ of the appellant, he received injuries which caused a continuous causally related partial disability. The sole issue here concerns the compensation rate to be paid claimant for such partial disability. The Referee, using the combined wages of the claimant for the year prior to the accident and his earnings following return to work thereafter for the one employer, determined his reduced earnings to be $8.88 per week. Upon review, the board reversed and determined that pursuant to subdivision 3 of section 14, his average weekly wage was $154.73 which was based solely on his earnings with the brewery and determined his other employment was dissimilar. The board also found that his earnings subsequent to the accident with the Linotype Company could not be used as a factor. On this basis the board fixed his reduced earnings rate at $36 per week which, when translated into yearly earnings, constituted more than claimant earned when actually work-

ing for the brewery — one year excepted. Subdivision 6 of section 15, captioned "Maximum and minimum compensation for disability" after reciting certain formulae, concludes "In no event shall compensation when combined with decreased earnings or earning capacity exceed the amount of wages which the employee was receiving at the time the injury occurred." The intended purpose of section 14, with which we all agree, was to insure that the claimant receive a proper sum for compensation benefits. With reference to subdivision 3 thereof, this court stated in *Matter of Derion* v. *Gilford Manufacturing Co.* (282 App. Div. 788) : "The basic command of the Legislature in setting up the omnibus machinery of subdivision 3 is that the board shall have regard to the previous earnings of the employee and shall attempt to evaluate reasonably his earning capacity." It is difficult here to conclude that the award is a reasonable evaluation by the board of claimant's earning capacity. In actuality it leads to the inevitable conclusion that the claimant, who is entitled to compensation, is being overly compensated to the extent that while the award is supposed to be for a partial disability, in reality it is for a full disability. This in no way refers to his full-time employment by the Linotype Company. It may be argued that the amount determined by the Referee would not fairly compensate the claimant but it is obvious it was not the intent of the Legislature to have subdivision 3 applied so as to violate subdivision 6 of section 15. We have recently reviewed several cases (refer to the majority decision) where a similar result to the one here was found and which leads me to conclude that the board is erroneously using the provisions of subdivision 3 of section 14 for arriving at compensation rates in many instances in excess of the claimant's actual earnings. You cannot blandly pass over subdivision 6 of section 15 by referring to *Matter of Terry* v. *City of Glens Falls* (2 A D 2d 625, motion for leave to appeal denied 1 N Y 2d 644). (See *Matter of Crawley* v. *Failla*, 6 N Y 2d 57, 61.) The provisions of subdivision 3 are actually self-defeating. The forepart states that "annual average earnings" shall "reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the accident" but the proviso says they "shall consist of not less than two hundred times the average daily wage * * * in such employment". It is impossible in most cases to satisfy both requirements. But the Legislature surely did not intend its application to be used so as to arrive at an absurd result; to wit, that the compensation to be paid would amount to more than the earnings of the claimant at the time of the injury. The purpose of subdivision 6 of section 15 is to act as a "stop gap" in such situations. Such procedure must have been the intent of the Legislature and accordingly should be adhered to. For these various reasons I vote to reverse and remit with instructions to the board to apply subdivision 3 of section 14 where necessary but in such event the award is to be leveled at a point where the amount will not exceed the wages that were being earned at the time of the accident. In this case, the earnings for the year prior to the claimant's accident were $1,269.36. The rate that has been fixed by the board of $36 per week would amount to $1,872 per year or $602.64 more than his actual earnings. Under such circumstances subdivision 6 of section 15 mandates that $1,269.36 be the maximum and the wage rate of the claimant herein accordingly should be $24.41 per week.