■ In the Matter of the Claim of ARNOLD PEASE, Appellant, v ANCHOR MOTOR FREIGHT et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.—Levine, J.

Claimant has been employed as a truck driver for Anchor Motor Freight since 1969. Since 1973, claimant has also had his own construction business which primarily engaged in excavation and grading work. On April 17, 1976 claimant injured his back while working for Anchor. In the workers' compensation proceeding which ensued, the parties stipulated to an apportionment of claimant's disability, with 25% related to a preexisting back condition and 75% causally related to the compensable injury. Numerous hearings were held to determine, *inter alia,* claimant's average weekly wage. Claimant argued that his average weekly wage should be deter-

mined using the "200 multiple" method set forth in Workers' Compensation Law § 14 (3). Anchor contended that use of the 200 multiple was inappropriate since claimant voluntarily limited his employment. In support of this contention, Anchor relied on evidence that claimant had worked only 63 days in the year prior to the accident and claimant's own testimony that he sought as much time off from Anchor as possible so that he could devote time to his own business. The Workers' Compensation Board ultimately found that claimant had voluntarily limited his employment with Anchor and that his average weekly wage should be computed from his actual earnings rather than the 200 multiple method. The Board then restored the case for further development of the record as to claimant's earnings from his business and for appropriate awards. This appeal by claimant ensued.

On appeal, claimant does not dispute that he intentionally limited his employment with Anchor by regularly invoking a union rule which permitted him to take a total of 21 days to return to the job following a layoff even though work was then available. Claimant contends that, because his time away from Anchor was used to engage in dual and dissimilar employment in his own business, it does not constitute a voluntary limitation of employment for the purpose of computing his average weekly wage. In our view, however, this contention is not supported by the applicable case law. The 200 multiple method is properly used to compute the average weekly wage of a part-time or intermittent employee only where there has been a finding that the employee was "fully available" for the employment at issue *(see, Matter of Pfeffer v Parkside Caterers,* 42 NY2d 59, 60-61). Thus, the dispositive factor in cases where a claimant has two concurrent employments is whether a conflict exists between the two jobs such that a claimant's availability for one job is limited by his other employment *(see, Matter of Henry v Pittman Co.,* 60 AD2d 733, *lv denied* 44 NY2d 642; *cf., Matter of Reasoner v New York State Dept. of Motor Vehicles,* 110 AD2d 962, 963; *Matter of Stallone v Liebmann Breweries,* 12 AD2d 716, *affd* 10 NY2d 907). Here, the evidence clearly indicates that claimant, by voluntarily extending his layoff periods, limited his availability for employment with Anchor. That claimant chose not to work when work was available is evidenced by Anchor's payroll records, which show that claimant earned less than half the amount earned by the employee with least seniority. The Board's determination of claimant's average weekly wage is supported by substantial evidence and must be affirmed.

We decline to review the other matters raised by claimant because those issues have not yet been finally determined by the Board.

Decision affirmed, without costs. Mahoney, P. J., Weiss, Levine, Mercure and Harvey, JJ., concur.